325 So.2d 346 (1975)
Walter VINCENT, Plaintiff-Appellee,
v.
Dave MEAUX, Jr., et al., Defendants-Appellants.
No. 5204.
Court of Appeal of Louisiana, Third Circuit.
December 24, 1975.
*347 Broussard, Broussard & Moresi by Marcus A. Broussard, Jr., Abbeville, for defendants-appellants.
Ruele P. Bourque, Kaplan, for plaintiffappellee.
Before HOOD, HUMPHRIES and PETERS, JJ.
HUMPHRIES, Judge.
This is an appeal by defendants-appellants from an adverse judgment granting plaintiff the right to use water from a deep water well.
Walter Vincent, plaintiff-appellee, filed suit for a declaratory judgment seeking to have his rights under a 1941 partition agreement determined. A certain tract of land was partitioned into three lots. In 1941 the use of a deep water well, located on lot #3, was reserved for lots #1, #2 and #3. The Act of Partition contained the following stipulation:
"It is further agreed and understood that the deep water well located on tract number one is reserved for the use and benefit of lots #1, #2 and #3. The owner of either of said lots enjoying the right of use of said well for irrigation purposes when so desired or upon necessity."
The plaintiff-appellee is the owner of lot #2. Lloyd Abshire and Lena J. Abshire (wife of David Meaux, Jr.) own lot #1. Agnes Vincent Hebert is the owner of lot #3.
This conventionally created right is a servitude. C.C. Art. 723.
"The right of drawing water from the spring of another is also a servitude."
The servitude created is a real servitude. C.C. Art. 646 divides servitudes into two kindspersonal and real. In this case the servitude is a real or predial or landed servitude because the act creating it specifically provides that it is for the benefit of the other estates. The act creating the servitude did not grant it to a particular person.
David Meaux, Jr. claims an interest in the well. He claims that he purchased Lloyd Abshire's interest in the well. There is no explanation in the record regarding this supposed transaction. Certainly he can not purchase Abshire's interest in the well unless he purchases the land as well. The servitude was created in favor of an estate and not in favor of one particular individual.
The deep water well in question is located on lot #3 which is owned by Mrs. Hebert. Mrs. Hebert disclaims any interest in the well. She claims that she verbally gave her interest in the well to Ovey Abshire, father of Lena and Lloyd Abshire. This is not explained in the record.
In 1951 the well dried up due to a lowered water table. In this year Ovey Abshire employed a contractor to re-dig the well. Not only was the well dug deeper but steel casing for wooden cyprus casing was substituted. Following this Ovey Abshire claimed all interest in the well.
Subsequent to the partition, plaintiff's lessees, with one or two years exception, planted crops on his land and used the well in question for irrigation purposes. Prior to 1951 the plaintiff did not pay anything for procurement of water from the well located on lot #3. After 1951 the plaintiff was required to pay 1/5th of his crop for the use of water from the well on lot #3.
Plaintiff-appellee contends that he should have the free and uninhibited use of the well pursuant to and by virtue *348 of the servitude created in the 1941 act of partition. Defendants-appellants contend that the object of the servitude ceased to exist in 1951 when the well dried and hence the servitude was extinguished. The defendants also contend that the servitude has been extinguished by the 10 year prescription period of non-usage provided by C.C. Art. 789. Defendants contend that by paying for the use of the well the servitude was not used in the mode intended at its inception and hence the prescriptive period has run. In order to have kept the servitude viable, it was necessary for the plaintiff to have used it at least once every ten years since its creation in 1941. The evidence revealed that although the plaintiff never personally planted his land or used the well for irrigation purposes, there was never a period of ten years wherein his lessees did not use the land and well. This was sufficient to interrupt the running of prescription. C.C. Art. 793 provides that the servitude may be preserved by persons other than the owner.
"To preserve the right of servitude and prevent prescription from running against it, it is not necessary that it should be exercised exclusively by the owner to whom it is due, or by those who use his rights, or who represent him directly, as the usufructuary, the lessee or tenant, the attorney in fact or agent. It suffices if the servitude has been exercised by workmen employed by the owner, or by his friends, or those who come to see him."
The question becomes whether the paying for the water is a "use" of the servitude. The servitude was the use of a well. The servitude was used whenever plaintiff, through his lessees, used the well for irrigation purposes. The payment for the water from the well does not abviate the fact that the well, and hence the servitude, was indeed used and prescription interrupted.
The defendants-appellants also advanced the proposition that the servitude ceased to exist when the original well became dry. As authority of their contentions they cite C.C. Articles 783-786 which deal with the destruction of the estate which owes the servitude. It is the position of the defendants that the deepening of the old well did not re-establish the servitude.
The well existing in 1941 ceased to be functional due to a lowered water table. Drilling on the same site, defendants' ancestors lowered the original well shaft to a point which was concurrent with the then existing water table and set a new and different type of casing. This did not create a new well. It was a reestablishment of the thing. Although the Civil Code does not, except in rare circumstances, impose an affirmative duty upon the owner of the servient estate to do work to keep the object of the servitude usable, neither does it prohibit him from so acting. The tenor of Articles 772-775 indicates that the redactors of the Code sought to make preservation of the servitude, through necessary works, as convenient as possible. The deepening of the well by the defendants' ancestors was "works necessary to use and preserve the servitude." C.C. Art. 772 and 773.
We are of the opinion that the servitude was not extinguished by the destruction of the object of the servitude, nor was it extinguished by ten years of non-usage. Plaintiff was the beneficiary of the servitude created in 1941 and maintained through the years. He is entitled to the use of that servitude.
This Court is also of the opinion that plaintiff would be unjustly enriched if he were not compelled to pay his pro rata share of the costs of the operation, maintenance and preservation of the well. The cost of work necessary for the preservation and use of the servitude must be *349 shared by those persons to whom the servitude is due. C.C. Art. 773.
We must remand this case to the trial court as an indispensable party was omitted from the proceedings below. C.C.P. 641. Mrs. Agnes Vincent Hebert, the owner of the lot upon which the well is located must be a party even though she sought to disclaim any interest therein. Her interest, however, is very much at issue. C.C. Art. 654 provides:
"Servitude is a right so inherent in the estate to which it is due, that the faculty of using it, considered alone and independent of the estate, can not be given, sold, let or mortgaged without the estate to which it appertains, because it is a servitude which does not pass to the person but by means of the estate."
Mrs. Hebert sought to divest herself of her interest in the well without divesting herself of the estate, an act clearly contrary to the Code.
The costs of appeal are divided equally between appellants and appellee. All other costs are to await further proceedings.
Remanded.